## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JULIE M. PARKER,                           )
                                           )
                        Plaintiff,         )
                                           )
v.                                         )        Case No. 04-1206-MLB
                                           )
LIFE CARE CENTERS OF AMERICA,              )
INC., d/b/a/ Andover Health Care Center,   )
                                           )
                        Defendant.         )
_____   )

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion to Compel (Doc. 30), seeking to

compel Defendant to fully answer her First Set of Interrogatories and First Request

for Production of Documents.  Defendant filed a response (Doc. 36), stating that it

has responded to some requests or is in the process of responding and objecting to

other requests as privileged, irrelevant, overly broad, and/or unduly burdensome.

Plaintiff filed a reply.  (Doc. 40.)  The Court then set the motion for hearing.

Defendants subsequently filed a Motion for Leave to File a Sur-reply (Doc. 50.)[1]

Then Court then held a hearing on the motion on July 12, 2005.  Plaintiff appeared

through counsel J. Steven Massoni; Defendant appeared through counsel Anthony

---

[1]  The motion recites that the proposed Sur-reply is attached to the motion as
Exhibit A.  However, the Sur-reply was instead filed as a separate document.  (Doc. 51.)

Romano and Judy Yi.

## BACKGROUND

Plaintiff filed suit against Defendant, a corporation that owns and operates nursing and residential care facilities, including Andover Health Care Center ("AHCC"), after she was fired from her position as a Registered Nurse with AHCC.  Plaintiff worked for AHCC from September 11, 2001 to May 30, 2003, when she was terminated for allegedly "unsatisfactory performance."  Plaintiff alleges that lack of performance was pretext, and that she was, in fact, terminated for whistle blowing and filing a workers' compensation claim.  Plaintiff asserts five claims for relief. (Doc. 17.)

Plaintiffs' First Claim for Relief is for retaliatory discharge for whistle blowing.  Plaintiff alleges that she repeatedly reported to supervisors and to Defendant's Corporate Compliance Officer that AHCC's staffing levels were below the minimums required by applicable state and federal regulations and that many of the nurses on Plaintiff's shifts would take numerous smoke breaks together, leaving only Plaintiff in the building to care for the 154 residents.  Plaintiff alleges that such reporting caused her to be the subject of harassment and retaliatory conduct by her co-workers and ultimately resulted in her termination.

Plaintiff's Second Claim for Relief is for retaliatory discharge for filing a

workers' compensation claim.  Plaintiff alleges that approximately one month before her termination, Plaintiff suffered a "needle-stick" injury that resulted in her filing a workers' compensation claim.  Plaintiff alleges that such exercise of her rights were a motivating factor in Defendant's decision to terminate her employment.

Plaintiff's third claim is for violation of Kansas' Risk Management Act ("RMA"), K.S.A. § 65-4921 (2002) *et seq.*, which requires health care providers to report "reportable incidents"[2] under threat of criminal prosecution.  *See* K.S.A. § 65-4927(c) (2002) (making willful failure to report a class C misdemeanor).  The RMA further prohibits employers from discriminating against employees for making reports under the statute.  K.S.A. § 65-4928 (2002).  Plaintiff alleges that her reporting of potentially dangerous understaffing to her supervisor was the basis for the discrimination against Plaintiff, including her termination.

Plaintiffs fourth claim is for defamation.  Plaintiff alleges that after she reported the understaffing, her co-workers and supervisors maliciously published unspecified false statements about her, causing harm to Plaintiff's reputation and

---

[2] "'Reportable incident' means an act by a healthcare provider which: (1) Is or may be below the applicable standard of care and has a reasonable probability of causing injury to a patient; or (2) may be grounds for disciplinary action by the appropriate licensing agency.  K.S.A. § 65-4921(f) (2002).

emotional and mental distress.

Plaintiff's fifth claim is for breach of an implied contract of employment between Plaintiff and Defendant.  Plaintiff alleges that the contract ensured that her employment would not be terminated without good cause or without the benefit of progressive discipline.  Plaintiff further alleges that she was terminated both without good cause and without progressive discipline.

During discovery, Plaintiff served her First Set of Interrogatories and First Request for Production of Documents on Defendant.  After some disclosure, the parties conferred and negotiated a protective order (Doc. 27), which resulted in additional disclosures.  Plaintiff argues that the disclosures are inadequate for requests 1, 3, 5-13, 16, 17, 20-30 and 32-39 and interrogatories 3-5, 7, 10, 11, 14, and 18.  Plaintiff seeks attorneys' fees and costs associated with this motion.

## DISCUSSION

At the hearing, the parties grouped the remaining disputes into seven categories.  The Court heard argument from counsel and resolved each of the disputed categories as follows:

*1.*    ***March 2002 Self Report and Records of Complaint No. 311026 (identified on Defendant's privilege log as Bates No's AHC 371-390).***

After presenting argument on this category, the parties announced an agreement that Defendant would turn this file over to Plaintiff.  This agreement

moots any consideration by the Court of the claims of privilege as to this document.

## 2.      *State Surveys and Non-Compliance Documents.*

The major dispute here concerned the relevant time period which is applicable to the request.  Plaintiff sought discovery of documents from January 1, 2000 to date, while Defendant argued that only documents created during Plaintiff's employment were relevant.  As noted, Plaintiff was employed by Defendant from September 11, 2001 to May 30, 2003.  After hearing arguments, the Court held that the relevant time period was September 11, 2001 through December 31, 2003.  To the extent that Defendant has not produced these documents for the full time period allowed by the Court, they are to supplement their production.

## 3.      *Reports of Falls and Incidents in the Facility.*

As to these other "self report" documents, the parties also reached an agreement that does not require the Court to rule on any privilege issues at this time.  Defendant has agreed to review all such documents in the same time period ordered by the Court as to Category 2 above.  If any of the reports involve issues of understaffing, Defendant will make Plaintiff aware of the "core facts" upon which the report is based (without identification of the complaining party).

**4.      *Personnel Files of Other Employees.***

This category encompassed three requests for production: No's 27, 36 and

37.  As to Request No. 27, Defendant will review the relevant files again and will

supplement its production of any information requested.  As to Request No. 36,

Defendants are directed to produce the personnel files of any employees who

provided information relied upon by Defendant in terminating Plaintiff.  As to

Request No. 37, the Court finds that the information sought by this request is not

calculated to lead to the discovery of admissible evidence and Defendants are not

required to produce those documents.  All personnel files which are produced will

be subject to the Protective Order (Doc. 27) entered in this case.

**5.      *Calculation of Per Patient Day Information.***

Defendant is directed to supplement its response to Interrogatory No. 7 by

providing a narrative description of how Defendant calculates this information

using the formula it has previously identified.  Defendant shall also identify a

person employed by Defendant who is most knowledgeable about how these

calculations are performed.

**6.      *Identification of Other Lawsuits.***

In response to Request for Production No. 35 and Interrogatory No. 18,

Defendant shall provide the information concerning other lawsuits concerning the

Andover facility which involve claims of retaliation or understaffing (including any personal injury claims that might be based upon alleged understaffing) where the activity that is the basis for the claim occurred during the time period September 11, 2001 through December 31, 2003, regardless of when the lawsuit was actually filed.

**7.**      ***Missing Document Pages.***

Plaintiff has identified certain Bates No's documents that it claims it did not receive.  Defendant urges that it produced all of the identified pages at some time during its production of documents.  The parties will informally resolve this matter and Defendant has agreed to provide additional copies of any documents Plaintiff is unable to locate from prior productions.

The parties agreed at the hearing that resolution of the above categories of disputes will fully resolve all matters covered by the motion to compel.  Defendant has agreed that the additional or supplemental productions and responses required by this Order shall be made within two weeks or by **July 27, 2005.**  The parties further advised that no formal opinion needs to be issued by the Court, and the basis for the Court's rulings are fully set forth in the record of the motions hearing.

While Plaintiff argued that Defendant's Motion for Leave to File a Sur-reply should be denied, the Court will grant the motion (Doc. 50) and authorize the filing

7

of the Sur-reply.  (Doc. 51.)  As announced by the Court, the legal issues set out in the Sur-reply had already been considered by the Court and dealt mainly with the privilege issues which were resolved by agreement of the parties at the hearing. Therefore Plaintiff will not be prejudiced by the filing of the Sur-reply.

Finally, Plaintiff sought attorneys fees and expenses for the filing of her motion to compel.  "Whether or not to impose sanctions addresses the discretion of the Court."  ***Nat'l Hockey League v. Metropolitan Hockey Club, Inc.***, 427 U.S. 639, 642, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976).  The Court must consider on a case-by-case basis whether the party's failure was substantially justified or whether other circumstances make the imposition of sanctions inappropriate.  ***Starlight Int'l, Inc. v. Herlihy***, 186 F.R.D. 626, 646 (D. Kan. 1999). Because the Court is granting in part and denying in part the motion to compel, the Court finds that a just resolution of the issue of costs and attorneys fees requires that the parties each bear their own costs and attorneys fees in connection with the filing and defense of the motion to compel.  *See* Fed. R. Civ. P. 37(a)(4)(C).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc. 30) is GRANTED IN PART and DENIED IN PART as set forth in this Order for the reasons set out at in this Order and the July 12, 2005 hearing.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File a

8

Sur-reply (Doc. 50) is granted.

Dated at Wichita, Kansas, this 13th day of July, 205.

         s/ Donald W. Bostwick

DONALD W. BOSTWICK
United States Magistrate Judge