IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
JULIE M. PARKER,                        )
                                        )
                    Plaintiff,          )    CIVIL ACTION
                                        )
v.                                      )    No.  04-1206-MLB
                                        )
LIFE CARE CENTERS OF AMERICA,           )
INC., d/b/a/ Andover Health             )
Care Center,                            )
                                        )
                    Defendant.          )
                                        )
```

## MEMORANDUM AND ORDER

### Background

The history of this case is set forth in the court's amended memorandum and order filed March 31, 2006 (Doc. 77).  Plaintiff initially asserted that defendant terminated her in retaliation for whistle-blowing activities, filing a worker's compensation claim and for complaints made under the Kansas Risk Management Act.  Plaintiff also claimed that defendant defamed her and breached an implied contract of employment.  In its amended memorandum and order, the court granted defendant's motion for summary judgment on plaintiff's claims for retaliation and defamation and denied defendant's motion on plaintiff's claim for breach of implied contract of employment. In so doing, the court noted:

> An implied contract of employment arises from facts and circumstances showing mutual intent to contract.  Kastner v. Blue Cross & Blue Shield of Kansas, Inc., 21 Kan. App.2d 16, 23, 894 P.2d 909, 915 (1995).  The intent of the contracting parties is normally a question of fact for the jury, and existence of an implied contract of employment requires a factual inquiry.  Frye v. IBP, Inc., 15 F. Supp.2d 1032, 1044.  Factors to be considered in determining whether the parties had a mutual intent to

>contract include the understanding and intent of the parties, which are ascertainable from written and oral negotiations, the conduct of the parties, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to make clear the intention of the parties at the time the employment relationship commenced. <u>Id.</u> at 1044-45 (citations omitted). The parties must have a mutual intent to enter into an employment contract; plaintiffs' unilateral expectations of continued employment are insufficient to create a contract. <u>Panis v. Mission Hills Bank, N.A.</u>, 60 F.3d 1486, 1492 (10th Cir. 1995).

<u>See also</u>, PIK 3d 124.55, Wrongful Discharge/Implied Contract and the cases cited in the comment section.

These general principles place into perspective the parties' motions in limine. Both parties seek to prohibit the admission of certain evidence at trial. To the extent it can with the information before it, the court will briefly rule on each motion. The court cautions the parties, however, that nothing in this order will preclude the admissibility of the excluded evidence if it otherwise becomes relevant at trial, and vice-versa. <u>See</u> <u>Turley v. State Farm Mut. Ins. Co.</u>, 944 F.2d 669, 673 (10th Cir. 1991) ("The better practice would seem to be that evidence of this nature . . . should await development of the trial itself.").

<u>Motions In Limine</u>

The following motions in limine, and where filed, responses are before the court:

1. Plaintiff's omnibus motion in limine and defendant's response (Docs. 91, 92 and 112);

2. Defendant's motion in limine regarding comments on attorneys (Doc. 99);

3.  Defendant's motion regarding comments on motions and pleadings (Doc. 100);

4.  Defendant's motion regarding insurance coverage (Doc. 101);

5.  Defendant's motion regarding settlement discussions (Doc. 102);

6.  Defendant's motion regarding discussions of counsel and plaintiff's response (Doc. 103 and 115);

7.  Defendant's motion regarding improper evidence (Doc. 104);

8.  Defendant's motion regarding privileged matters (Doc. 105);

9.  Defendant's motion regarding evidence referring generally to the long term care industry and plaintiff's response (Docs. 106 and 113); and

10. Defendant's motion regarding plaintiff's retaliation (whistle-blowing and defamation claims) (Doc. 107).

<u>Plaintiff's Omnibus Motion</u>

<u>Evidence Pertaining to Complaints Made By Plaintiff's Co-Workers</u>

As noted in its amended memorandum and order at page four, Terri Lovell, Director of Nursing, received numerous notes expressing complaints, most of which were undated, from plaintiff's co-workers regarding their supposed difficulties during plaintiff's shifts. Lovell apparently put some or all of these complaints in a "soft file." Lovell and Kelly Winter, Director of Training, met with plaintiff on several occasions to discuss "complaints" regarding her performance but plaintiff was not disciplined after any of these meetings. Plaintiff has generally denied that the events giving rise to the complaints occurred.

The parties agree that none of the "complaints" are relevant to

the question of the existence of an implied contract of employment. Plaintiff asserts that the notes expressing the complaints are inadmissible because they are irrelevant in view of Lovell's acknowledgment that she did not base her decision to terminate plaintiff on the contents of the notes, that the notes are hearsay and not subject to any recognized objection, that the notes constitute inadmissible character evidence and that the notes are otherwise inadmissible because their probative value, if any, is substantially outweighed by the factors set forth in Fed. R. Evid. 403.

Defendant responds that the notes helped form the basis of Lovell's belief that plaintiff had irreconcilable personality issues and that she could not work with her co-workers and, therefore, were the basis for plaintiff's termination, citing Lovell's deposition at page 36, lines 16-18.

Unfortunately for defendant, that is not Lovell's testimony. Lovell testified: "Her performance of lacking [sic] was the constant turmoil that was created in the workforce." Therefore, the relevance of the notes to Lovell's decision to terminate plaintiff is highly questionable, even if it can be established that the notes are admissible as records of regularly conducted activity under Fed. R. Evid. 803(6). Neither party cites case authority regarding the requirements of rule 803(6). There is a somewhat dated Tenth Circuit case which held that complaints by unidentified individuals were admissible under Rule 803(6) as business records. However, the important distinction is that the parties stipulated to foundation of the complaints, thereby rendering the complaints admissible hearsay. See Ponderosa System, Inc. v. Brandt, 767 F.2d 668, 670-71 (10th cir.

1985). Here, there has been no such stipulation. (Pretrial Order, Doc. 68).

The principal requirement for admission of evidence under Rule 803(6) is the reliability and the trustworthiness of the record. If Lovell did not rely on the notes in connection with her decision to fire plaintiff, it will be an uphill battle for defendant to establish that the notes are reliable and trustworthy.[1] The court has not seen the notes but according to a summary of their contents contained in plaintiff's motion, many are undated and unattributed and some contain rumors and speculation. Obviously, even if the notes somehow could qualify under Rule 803(6), the notes would seem to be perfect candidates for exclusion under Rule 403.

Plaintiff also contends that the notes would constitute inadmissible character evidence under Rule 404. Defendant acknowledges that plaintiff's character should not be an issue but asserts that if plaintiff offers evidence that she was a good nurse, that she was professional and easy to work with, the notes should be admissible. Defendant cites no authority for this proposition. In the absence of persuasive authority, the court finds that evidence that plaintiff was a good nurse cannot be rebutted under the guise of Rule 404(a) character evidence by hearsay that plaintiff was a liar, was paranoid, was emotionally unstable, etc.

### The "Scabies Incident"

Defendant concedes that the "scabies incident" is irrelevant

---

[1]The business record exception applies only to written or tangible documents, not to oral statements of employees. <u>In re Independent Service Organizations Antitrust Litigation</u>, 114 F. Supp. 2d 1070 (D. Kan. 2000).

unless plaintiff uses evidence of the "incident" as proof that defendant breached an implied contract of employment. The court agrees with defendant.

## Previous Employment at Presbyterian Manor

Defendant concedes that plaintiff's previous employment history is not relevant to the existence of an implied contract of employment and whether the implied contract was breached. Defendant argues, however, that plaintiff's history of tenure with previous employers is relevant in view of the testimony of plaintiff's expert that plaintiff would have been employed by defendant for fifteen years. Based on the information before it, the court agrees with defendant. The court has not seen plaintiff's expert's report and therefore is unaware of the factual basis of the expert's assumption that plaintiff would have worked for defendant for fifteen years. However, in the absence of case authority to the contrary, the court finds that defendant is entitled to challenge the expert's assumption with facts regarding the length of plaintiff's previous employments.

## Plaintiff's Sexual Harassment Charge

Plaintiff contends that plaintiff's sexual harassment charge and settlement of that charge with a previous employer is irrelevant. Defendant concedes plaintiff's argument but sees an exception if plaintiff offers evidence of a letter of recommendation from the employer against whom the sexual harassment claim was brought and settled. The court has not seen the letter and cannot speculate under what circumstances, if any, plaintiff might seek to offer it. The court will reserve ruling on evidence of the sexual harassment claim and settlement depending upon the evidence produced at trial.

### Plaintiff's Mental Health and Medical Condition

Plaintiff asserts that evidence of her mental health and medical condition is not relevant "unless it becomes necessary for plaintiff to rebut the false assertions that she was mentally ill or taking a host of psychiatric medications." The court has indicated that if such "evidence" is based upon the notes in Lovell's files, then such evidence is inadmissible. Defendant nevertheless contends that such evidence is admissible to rebut plaintiff's "character" evidence that she was a good nurse. For the reasons previously stated, and in the absence of persuasive authority supporting admissibility, the court finds that evidence of plaintiff's medical and psychiatric history is not admissible under Rule 404 as rebuttal character evidence.

### Defendant's Motions In Limine

The following motions are sustained in the absence of a response by plaintiff: Dockets 99, 100, 101, 102, 104, 105 and 107.

### Motion Regarding Discussions of Counsel (Doc. 103)

Defendant moves to exclude evidence of discussions or conversations between counsel, including discussions reflected in deposition transcripts. Plaintiff responds that defendant's motion is so vague that it "does nothing more than set a trap for unwary counsel, the plaintiff and witnesses."

The court cannot envision how remarks or discussions by and between counsel during the pendency of this case can be relevant to the narrow issues which the jury will have to decide. For the benefit of counsel, if either party intends to offer evidence based on deposition testimony, all remarks or colloquy between counsel during the deposition must be edited out.

### Evidence that Refers Generally to the
### Long-Term Care Industry (Doc. 106)

Defendant argues that plaintiff should be precluded from making any statements that she was attempting to reform the long-term care industry generally or defendant's facility specifically, or to improve the care of patients in the long-term care industry generally or defendant's facility specifically.  Plaintiff responds that she was required to follow industry standards of practice and to improve treatment and care of patients at defendant's facility and that these aspects of her job are relevant to defendant's decision to terminate her employment.  Plaintiff cites PIK 3d § 124.55 for the proposition that the circumstances giving rise to the relationship and any other evidence pertaining to the conduct of the parties or usage of the business is relevant.  The types of non-exclusive factors which a jury may consider to determine the existence of an implied contract of employment is relatively broad but, in the absence of persuasive and supporting evidence, the court doubts that plaintiff was hired to improve the overall standards of the long-term care industry. Plaintiff may, or may not, have been hired to improve the standards of defendant's facility.  This is another area where a definitive pretrial ruling cannot be made.

### Plaintiff's Objections to Defendant's
### Final Exhibit and Witness Lists (Docs. 97 and 98)

Plaintiff's objections are sustained to witnesses and exhibits which would be offered on matters ruled inadmissible in connection with the motions in limine.

### Defendant's Motion In Limine to Strike Plaintiff's

-8-

<u>Exhibit Sheet and Final Disclosures, Defendant's Objections to</u>
<u>Plaintiff's Witness and Exhibit List</u>
<u>and Plaintiff's Response (Docs. 109, 110 and 114)</u>

Defendant asks the court to strike plaintiff's February 21, 2007 final exhibit list and to rule that plaintiff's July 10, 2006 witness and exhibit list serve as her final exhibit disclosures.  Plaintiff responds that two of the exhibits defendant seeks to strike relate to her current employment and are listed on defendant's final exhibit list.  The other three exhibits relate to the plaintiff's damages expert and either of little consequence or are helpful to defendant. The court is unable to determine from the parties' submissions exactly what exhibits are and therefore will take defendant's motion under advisement.  Defendant may renew its objections at trial.

IT IS SO ORDERED.

Dated this __2nd__ day of April 2007, at Wichita, Kansas.

s/ Monti Belot<br>
Monti L. Belot<br>
UNITED STATES DISTRICT JUDGE